# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
RITA SCHMIDT LODUCA,          :
DONNA FREEMAN, and            :   CIVIL ACTION
LYNN WESLEY, Individually     :
On behalf of all others       :
Similarly situated,           :   NO. 21-CV-0954
                              :
                Plaintiffs    :
                              :
        vs.                   :
                              :
WELLPET LLC, et. al.,         :
                              :
                Defendants    :
```

## MEMORANDUM AND ORDER

**JOYNER, J.**                                    **July    13, 2021**

Defendant WellPet LLC hereby moves for dismissal of Plaintiffs' Class Action Complaint[1] pursuant to Fed. R. Civ. P. 12(b)(6) for the reason that it fails to state any claims against it upon which relief may be granted.  For the reasons given in the following paragraphs, the Motion shall be granted in part and denied in part.

---

[1] Plaintiffs premise jurisdiction in this matter on the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ("CAFA") given that some of the proposed class members are citizens of a state different from that in which some of the defendants are citizens, the putative class size is larger than 100 and the amount in controversy exceeds $5 million.  Additionally, the primary defendants are neither States, State Officials or other governmental entities.

## Factual Background

Plaintiffs Rita Schmidt Loduca, Donna Freeman and Lynn Wesley are all Pennsylvania residents who allege that they purchased various dog food products manufactured and sold by Defendant WellPet, LLC - specifically its Wellness CORE, Wellness Complete Health, and Holistic Select dry dog food brands. The gist of the complaint, which Plaintiffs purport to bring "individually and on behalf of all others similarly situated," is that Defendants misrepresented the appropriate daily feeding amounts for dogs by omitting that the daily feeding instructions are only appropriate for the "highest demand activity level and breed." These misrepresentations purportedly resulted in Plaintiffs and members of the class purchasing more of Defendants' dog food than was otherwise necessary and caused their dogs to eat excessive and unhealthy amounts of food. (Class Action Complaint, ¶s 1-5). As a result of having been misled into purchasing more dog food than was "otherwise necessary," Plaintiffs aver that they "expended additional unnecessary financial sums and experienced a direct financial detriment." (Compl., ¶ 6). Plaintiffs claim that these misrepresentations were "fraudulent, deceptive, misleading, unfair and/or false," and that "Defendant WellPet LLC and its respective parent organization[s], Defendant[s]

Berwind Corporation" profited from them.[2]  Plaintiffs therefore
seek both monetary and injunctive relief under Pennsylvania
state law for breach of the implied warranty of merchantability,
unjust enrichment, negligent misrepresentation, fraud, civil
conspiracy and for violation of the Pennsylvania Unfair Trade
Practices and Consumer Protection Law, 73 P.S. § 201, *et. seq.*
Asserting that the Complaint fails to set forth any claims
against it upon which relief may be granted, Defendant WellPet
moves for dismissal of the Complaint in its entirety pursuant to
Fed. R. Civ. P. 12(b)(6).

## Legal Standards Governing 12(b)(6) Motions

It is well-settled that a motion under Fed. R. Civ. P.
12(b)(6) may be granted only if, accepting all well-pleaded
allegations in the complaint as true and viewing them in the
light most favorable to the plaintiff, a court finds that the
plaintiff's claims lack facial plausibility.  Warren General
Hospital v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011).  "A
claim has facial plausibility when the pleaded factual content
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  Thompson v.

---

[2]  The complaint alleges that Defendant WellPet was "a wholly owned subsidiary
of Defendant Berwind Corporation from approximately 2008-2020," until it was
sold for an undisclosed amount to Clearlake Capital Group, L.P. (Compl., ¶s
19-21).  Although Clearlake Capital Group, L.P. was also named as a defendant
to this lawsuit, on June 21, 2021 the parties stipulated to the dismissal of
Clearlake as a party from this matter without prejudice.

Real Estate Mortgage Network, 748 F.3d 142, 147 (3d Cir. 2014).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed.2d 929, 940 (2007). Through it all, the plaintiff has the burden of pleading "sufficient factual matter to show that the claim is facially plausible" thereby enabling "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Warren General Hospital, supra, (quoting Fowler v. UPMC Shadyside, 587 F.3d 203, 210 (3d Cir. 2009)).

Analysis of Rule 12(b)(6) motions is said to be two-fold. First, a court considering a motion to dismiss can begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed.2d 868 (2009). Second, when there *are* well-pleaded factual allegations, the court should then assume their veracity and proceed to determine whether they plausibly give rise to an entitlement to relief. Id.

**Discussion**

As noted, WellPet challenges all six counts of Plaintiffs' complaint on the grounds that they fail to aver the facts necessary to make out viable causes of action. We address each Count/Claim in turn.

*1. Unfair Trade Practices and Consumer Protection Law*

Count I of the Class Action Complaint purports to state a claim that, by their actions in formulating the feeding instructions for their dry dog food products, Defendants violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201, *et. seq.* ("UTPCPL").

The Pennsylvania Supreme Court has stated that the underlying foundation and purpose behind Pennsylvania's Consumer Protection Law was the prevention of fraud and protection of the public from unfair or deceptive business practices and to even the bargaining power between consumers and sellers in commercial transactions. Commonwealth by Creamer v. Monumental Properties, Inc., 459 Pa. 450, 459, 329 A.2d 812, 817 (1974); Burke v. Yingling, 446 Pa. Super. 16, 22, 666 A.2d 288, 291 (1994). In furtherance of that objective, the statute is to be liberally construed. Earl v. NVR, Inc., 990 F.3d 310, 311 (3d Cir. 2021); Commonwealth v. Golden Gate National Senior Care LLC, 648 Pa. 604, 625, 194 A.3d 1010, 1022 (Pa. 2018).

By its statutory language, the UTPCPL declares that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. 73 P.S. § 201-3.  It goes on to provide a definition of some twenty-one "unfair methods of competition" and "unfair or deceptive acts or practices" in § 201-2(4), three of which are invoked in Count I of Plaintiffs' Complaint - those set forth at §§ 201-2(4)(ii), (v), and (xxi).  Thus it appears that Plaintiffs are accusing Defendant of: "[c]ausing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services; "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have;" and/or "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  73 P.S. §§ 201-2(4)(ii), (v), (xxi).

"The statute creates a private right of action in persons[3] upon whom unfair methods of competition and unfair or deceptive acts or practices are employed and who, as a result, sustain an ascertainable loss."  Hunt v. United States Tobacco Co., 538

---

[3]  "Persons" within the meaning of the statute are defined to mean "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entities."  73 P.S. §201-2(2).  "Trade" and "commerce" are defined to "mean the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and includes any trade or commerce directly or indirectly affecting the people of this Commonwealth."

F.3d 217, 221 (3d Cir. 2008);  73 P.S. § 201-9.2.  Private

actions are also limited to "[a]ny person who purchases or

leases goods or services primarily for personal, family or

household purposes…"  73 P.S. § 201-9.2(a). It should be noted

that "[a]n act or a practice is deceptive or unfair if it has

the capacity or tendency to deceive, and neither the intention

to deceive nor actual deception must be proved; rather, it need

only be shown that the acts and practices are capable of being

interpreted in a misleading way."  Golden Gate, 194 A.3d at

1023(quoting Commonwealth ex rel. Corbett v. Peoples Benefit

Servs., Inc., 923 A.2d 1230, 1236 (Pa. Commw. 2007)).

        To state a cognizable UTPCPL claim, a plaintiff must

establish that the defendant engaged in an activity proscribed

under the law, that the plaintiff "justifiably relied on the

defendant's wrongful conduct or representation and … suffered

harm as a result of that reliance."  Hunt, supra, and Hoffman v.

Wells Fargo Bank, N.A., 242 F. Supp. 3d 372, 394 (E.D. Pa.

2017)(both quoting Yocca v. Pittsburgh Steelers Sports, Inc.,

578 Pa. 479, 854 A.2d 425, 438 (Pa. 2004)). See also, Kaymark v.

Bank of America, N.A., 783 F.3d 168, 180 (3d Cir. 2015)(noting

that "[t]o maintain a private right of action under the UTPCPL,

a plaintiff must demonstrate (1) an ascertainable loss of money

or property, real or personal (2) as a result of the defendant's

prohibited conduct under the statute"); and Santana Products,

Inc. v. Bobrick Washroom Equipment, Inc., 401 F.3d 123, 136 (3d
Cir. 2005) (recognizing that "[t]he Supreme Court of
Pennsylvania has held that a plaintiff bringing an action under
the UTPCPL must prove the common law fraud elements of reliance
and causation with respect to all subsections of the UTPCPL" and
citing Weinberg v. Sun Co., Inc., 565 Pa. 612, 777 A.2d 442, 446
(Pa. 2001) in support).  And, inasmuch as it must be
affirmatively proven, a plaintiff is not entitled to a
presumption of justifiable reliance. Hunt, 538 F.3d at 227.

In application of these holdings to the case at hand, we
find that the Plaintiffs' Complaint generally avers that the
feeding information on the labels of the bags of at least three
of Defendants' dry dog food brands misrepresents the correct
feeding recommendations for the vast majority of canine pets and
instead uses high activity dogs and/or breeds as the baseline
for its recommended quantities.  The Complaint goes on to allege
that the Plaintiffs relied upon the recommendations set forth on
the pet food bags in feeding their dogs and that this reliance
resulted in the overfeeding of their pets and in Plaintiffs (and
proposed class members) having purchased more food than
necessary to their financial detriment.  Given that "[t]he plain
language of the current statute imposes liability on commercial
vendors who engage in conduct that has the potential to deceive
and which creates a likelihood of confusion or misunderstanding"

and "[t]hat is all that is required," we find that Count I
satisfies the Twombly-Iqbal pleading standards.[4]  See, Gregg v.
Ameriprise Financial Services, Inc.,  245 A. 3d 637, 649, 2021
Pa. LEXIS 608,  2021 WL 607486 (Pa. 2021).  Indeed, even
notwithstanding that the labels do include language reflecting
that the feeding guidelines are "optimized for high activity
dogs who receive 1 hour or more of activity per day" and that
pet owners should "adjust as needed,"  Plaintiffs need only show
"that the acts and practices are capable of being interpreted in
a misleading way."  What constitutes "activity" or "high
activity" may well vary from the opinion of one pet owner to
another.  As this is a matter which is best sorted out through
discovery, Defendants' motion to dismiss the UTPCPL claim is
denied.

*2. Negligent and Intentional Misrepresentation (Fraud)*

In Counts IV and V of their Class Action Complaint,
Plaintiffs assert claims for intentional misrepresentation/fraud
and negligent misrepresentation on the grounds that Defendants
knew and/or should have known that the daily feeding directions
on their dog food products were false in that most dogs do not

---

4  We make this finding with one exception: the facts alleged do not support
a claim under § 201-2(4)(ii), insofar as we cannot find that Defendant's
alleged activities cause a "likelihood of confusion or of misunderstanding as
to the source, sponsorship, approval or certification of goods or services."
This claim is therefore dismissed with prejudice.

have the activity levels necessary to warrant receiving the amount of food recommended.

It is of course axiomatic that under Fed. R. Civ. P. 9(b), "a party must state with particularity the circumstances constituting fraud or mistake."  To satisfy this requirement, "a plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 185, 200 (3d Cir. 2007).  Stated otherwise, "Rule 9(b)'s particularity requirement requires a plaintiff to allege 'all of the essential factual background that would accompany the first paragraph of any newspaper story - that is, the who, what, when, where and how of the events at issue.'" United States ex rel. Bookwalter v. UPMC, 946 F.3d 162, 176 (3d Cir. 2019)(quoting U.S. ex rel. Moore & Company, P.A. v. Majestic Blue Fisheries, LLC, 812 F.3d 294, 307 (3d Cir. 2016) and In re Rockefeller Center Properties, Inc. Securities Litigation, 311 F.3d 198, 217 (3d Cir. 2002)).  "Rule 9(b) is not satisfied where a plaintiff merely lumps the who, what, when and where together." Riachi v. Prometheus Group, No. 19-2768, 822 Fed. Appx. 138, 142, 2020 U.S. App. LEXIS 21284 (3d Cir. July 9, 2020).

Furthermore, under Pennsylvania law, "[f]raud consists of anything calculated to deceive, whether by single act or

combination or by suppression of truth." Audi of America, Inc.
v. Bronsberg & Hughes Pontiac, Inc., 321 F. Supp. 3d 503, 524
(M.D. Pa. 2018)(quoting Martin v. Hale Products, Inc., 699 A.2d
1283, 1287-88 (Pa. Super. Ct. 1997)); Sarpolis v. Tereshko, 26
F. Supp. 3d 407, 419 (E.D. Pa. 2014), aff'd, 625 Fed. Appx. 594
(3d Cir. 2016). "To plead fraud under Pennsylvania law, a
plaintiff must allege (1) a 'representation' which is (2)
'material to the transaction at hand,' (3) 'made falsely, with
knowledge of its falsity or recklessness as to whether it is
true or false,' and (4) made 'with the intent of misleading
another into relying on it,' (5) 'justifiable reliance on the
misrepresentation,' and (6) that 'the resulting injury was
proximately caused by the reliance.'" Shuker v. Smith & Nephew,
PLC, 885 F.3d 760, 778 (3d Cir. 2018)(quoting Gibbs v. Ernst,
538 Pa. 193, 647 A.2d 882, 889 (Pa. 1994)).

The elements of negligent misrepresentation under the law
of Pennsylvania are similar. They are: "(1) a misrepresentation
of a material fact; (2) the representor must either know of the
misrepresentation, must make the misrepresentation without
knowledge as to its truth or falsity or must make the
representation under circumstances in which he ought to have
known of its falsity; (3) the representor must intend the
representation to induce another to act on it; and (4) injury
must result to the party acting in justifiable reliance on the

misrepresentation.  <u>Gibbs</u>, 538 Pa. at 210, 647 A.2d at 890; <u>Tulp</u>
<u>v. Educational Commission for Foreign Medical Graduates</u>, 376 F.
Supp. 3d 531, 544 (E.D. Pa. 2019).  "Thus negligent
misrepresentation differs from intentional misrepresentation in
that to commit the former, the speaker need not know his or her
words are untrue, but must have failed to make reasonable
investigation of the truth of those words."  <u>Gibbs</u>, <u>supra</u>.

In reviewing the Plaintiffs' Complaint in light of the
preceding principles, we find that while Plaintiffs' Complaint
has sufficiently pled the elements of both intentional and
negligent misrepresentation against Defendant under Pennsylvania
law, it fails to satisfy the particularity requirements of Rule
9(b) for pleading fraud.  To be sure, Plaintiffs aver that "the
feeding information for the Wellness Complete Health brands and
flavors misrepresents the correct feeding recommendations for
canine pets in the categorized weight classes" and that "feeding
canine pets within the parameters of the feeding information on
the labels results in overfeeding for the vast majority of
canine pets" which "causes consumers to expend unnecessary and
inappropriate sums on Defendants' products" and "caused
unsuspecting consumers to purchase more dog food, per year, than
would have been otherwise necessary."  (Compl., ¶s 58-60).  It
is further alleged that "Defendants knew or should have known
that most of the canine pet populations utilizing Defendants'

<u>12</u>

products are not highly active and therefore do not fall within the activity levels to necessitate the amount of food recommended" and that these representations and/or omissions are material as well as "fraudulent, deceptive, misleading, unfair and/or false and create a likelihood of confusion or misunderstanding…" (Compl., ¶s 72, 75). Thus, while the necessary "who," "what" and "how" elements have been met, missing are the "when" and "where" particulars necessary to comport with the requirements of the federal rule and to overcome this 12(b)(6) motion. We see no reason, however, why Plaintiffs should not be given the opportunity to fill in these blanks and inasmuch as we cannot find that granting leave to amend would be futile or unfair to defendants, leave to do so shall be given. See, e.g., Grayson v. Mayview Hospital, 293 F.3d 103, 106 (3d Cir. 2002)); Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000); Shane v. Fauver, 213 F.3d 113, 116-117 (3d Cir. 2000).

WellPet additionally argues that Count IV (negligent misrepresentation) must be dismissed as it is barred by application of Pennsylvania's economic loss doctrine. We disagree.

"The economic loss doctrine holds that 'no cause of action exists for negligence that results solely in economic damages

unaccompanied by physical injury or property damage.'" McGuckin v. Allstate Fire & Cas. Ins. Co., 118 F. Supp.3d 716, 719 (E.D. Pa. 2015)(quoting Excavation Techs., Inc. v. Columbia Gas Co. of Pa., 604 Pa. 50, 985 A.2d 840, 841 (Pa. 2009)).  It essentially "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract" and "effectively screens out negligence causes of action that seek economic damages without alleging any physical injury or property damage."  Ke v. Liberty Mutual Insurance Co., Civ. A. No. 20-1591, 2020 U.S. Dist. LEXIS 234904 at *23, 2020 WL 7353892 (E.D. Pa. Dec. 15, 2020) (quoting Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3d Cir. 2002) and McGuckin, supra.).  "The doctrine is premised on the notion that parties to a contract may protect themselves from negligence or defective products by negotiating the liability terms of the contract."  Bouriez v. Carnegie Mellon University, Civ. A. No. 02-cv-2104, 2010 U.S. Dist. LEXIS 33687 at *7, 2010 WL 1416845 (W.D. Pa. April 4, 2010)(citing East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 872-873, 106 S. Ct. 2295, 90 L. Ed.2d 865 (1986)).

Notwithstanding this general definition of the economic loss doctrine, in 2002, the Pennsylvania Supreme Court adopted *Restatement (Second) of Torts Section 552*, which provides:

**§552. Information Negligently Supplied for the Guidance of Others**

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

    (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

    (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Hence in Pennsylvania, "the economic loss rule does not apply to claims of negligent misrepresentation sounding under Section 552." Bilt-Rite Contractors, Inc. v. Architectural Studio, 581 Pa. 454, 484, 866 A.2d 270, 288 (Pa. 2005).

Contrary to Defendant's assertion that Pennsylvania courts apply the economic loss doctrine to negligent misrepresentation claims except where the party is "hired to advise," the Pennsylvania Supreme Court has held that Section 552 is not the

only exception to the general application of the doctrine.  To
be sure, in 2018 the Supreme Court clarified that Pennsylvania
follows "a 'reasoned approach' to applying the economic loss
doctrine that "turns on the determination of the source of the
duty plaintiff claims the defendant owed.'"  Dittman v. UPMC,
649 Pa. 496, 525, 196 A.3d 1036, 1054 (Pa. 2018)(quoting Bilt-
Rite, 866 A.2d at 288 and Tommy L. Griffin Plumbing & Heating
Co. v. Jordan, Jones & Goulding, Inc., 320 S.C. 49, 463 S.E. 2d
85, 88 (S.C. 1995)).  "Specifically, if the duty arises under a
contract between the parties, a tort action will not lie from a
breach of that duty." Id.  "However, if the duty arises
independently of any contractual duties between the parties,
then a breach of that duty may support a tort action."  Id.
Rejecting the notion that Section 552 of the Restatement carves
out a narrow exception to the general bar posed by the economic
loss doctrine to negligent misrepresentation claims, the Supreme
Court held that, to the contrary, "a negligent misrepresentation
claim made under Section 552 of the Restatement is one among
many tort claims in Pennsylvania for which the economic loss
doctrine does not act as a bar for recovery of purely economic
losses."  Dittman, 649 Pa. at 526, 196 A.3d at 1055.

Instantly, the gravamen of Plaintiffs' complaints against
Moving Defendant is that the feeding instructions listed on the

bags of several of its dry dog food products are misleading in
that they misrepresent the proper amounts to feed canines who
have average activity levels (as opposed to higher, *i.e.* those
who receive 1 hour or more of activity or exercise per day).
Plaintiffs' further aver that the daily feeding directions
contained on the labels of their dog food products are false and
that Defendants knew or should have known they were false, that
they relied upon the directions in purchasing the food and
feeding their dogs and that they incurred damages in the form of
having purchased more pet food than was "otherwise necessary."
(Pl's Compl., ¶s 138-144).  These allegations adequately plead a
cause of action for negligent misrepresentation under
Pennsylvania law.

     Moreover, there is nothing to suggest from a reading of the
complaint that the parties had anything other than a routine
retail-seller to retail-consumer/buyer relationship or that
Plaintiffs in any way negotiated liability terms with Defendant.
Inasmuch as Plaintiffs thereby aver that Defendant has in the
course of its business supplied false/misleading information for
the guidance of consumers such as they, that they relied upon
that information to their detriment and purportedly suffered
losses as a result, we find that a claim under Restatement
Section 552 has been stated, and the economic loss doctrine does

not bar Count IV.  Accordingly, the motion as to Count IV is denied and the motion as to Count V is granted with leave to re-plead.

*3.  Breach of Implied Warranty of Merchantability*

In Count II of their Complaint, Plaintiffs also present a state law claim for breach of the implied warranty of merchantability. Defendants likewise seek the dismissal of this count for failure to state a claim pursuant to Rule 12(b)(6).

In Pennsylvania, claims for breach of the implied warranty of merchantability are governed by the Uniform Commercial Code, 13 Pa. C.S.A. § 2314, which reads:

**§2314.   Implied warranty; merchantability; usage of trade**

**(a) Sale by merchant. -** Unless excluded or modified (section 2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.  Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

**(b)   Merchantability standards for goods. -** Goods to be merchantable must be at least such as:

> (1) pass without objection in the trade under the contract description;
>
> (2) in the case of fungible goods, are of fair average quality within the description;
>
> (3) are fit for the ordinary purposes for which such goods are used;
>
> (4) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;

(5) are adequately contained, packaged, and labeled as the agreement may require; and

(6) conform to the promises or affirmations of fact made on the container or label if any.

**(c) Course of dealing or usage of trade. -** Unless excluded or modified (section 2316) other implied warranties may arise from course of dealing or usage of trade.

To establish a breach of an implied warranty of merchantability, Plaintiffs must allege that "(1) the product malfunctioned; (2) that plaintiffs used the product as intended or reasonably expected by the manufacturer; and (3) the absence of other reasonable secondary causes." Holtec International & Holtec Manufacturing Division, Inc. v. ARC Machines, Inc., 492 F. Supp.3d 430, 445 (W.D. Pa. 2020). "Both the implied warranty of merchantability and the warranty of fitness for a particular purpose arise by operation of law and serve to protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose." Altrionics of Bethlehem, Inc. v. Repco, Inc., 957 F.2d 1102, 1105 (3d Cir. 1992). "In order to be merchantable, goods must 'be fit for the ordinary purposes for which such goods are used.'" Id.(quoting 13 Pa. C.S.A. § 2314(b)(3). However, "the concept of merchantability does not require that the goods be the best quality, or the best obtainable, but it does require that they have an inherent soundness which makes them suitable for the

purpose for which they are designed, that they be free from significant defects, that they perform in the way that goods of that kind should perform, and that they be of reasonable quality within expected variations and for the ordinary purpose for which they are used." American Atelier, Inc. v. Materials, Inc., No. 16-2107, 675 Fed. Appx. 149, 152, 2017 U.S. App. LEXIS 851, 2017 WL 203371 (3d Cir. Jan. 18, 2017)(quoting Gall by Gall v. Allegheny County Health Department, 521 Pa. 68, 555 A.2d 786, 789-90 (Pa. 1989)). "Thus, to establish a breach of this warranty, a plaintiff must show, among other things, that the product at issue was defective," and this burden may be met "by proving that the product 'functioned improperly in the absence of abnormal use and reasonable secondary causes.'" Id.(citing Altrionics, supra).

Historically, Pennsylvania has recognized causes of action for breach of the implied warranty of merchantability for animal feeds that fail "to be fit for the ordinary purposes for which such goods are used" and which are not "adequately contained, packaged and labeled as the agreement may require," and in so doing has "eliminated the privity requirement in assumpsit suits[5] by purchasers against remote manufacturers for beach of implied warranty." See, e.g., Kassab v. Central Soya, 432 Pa. 217, 226,

---

[5] An assumpsit suit is "a common law form of action which lies for the recovery of damages for the non-performance of a parol or simple contract." BLACK'S LAW DICTIONARY 122 (6th ed. 1990).

246 A.2d 848, 852 (1968),(*overruled on other grounds*, 526 Pa. 110, 584 A.2d 915 (1990)).  Thus, the lack of privity between a plaintiff and a defendant cannot insulate the latter from liability for breach of warranty.  <u>Id</u>., 432 Pa. at 235, 246 A.2d at 856.

Here, we must concur with Defendant that Plaintiffs have failed to make out a cause of action against them for the implied warranty of merchantability.  Indeed, our review of the Complaint fails to yield a finding of any facts which suggest that Defendant's pet food was in any way defective or of inferior quality or was in any way unfit for its stated purpose. Again, the basis for Plaintiffs' claims is that they were misled into purchasing too much pet food - not that there was anything wrong with the food products which they bought.  In view of this and given that Count II contains nothing more than conclusory and formulaic allegations that Defendant's misrepresentations and omissions constituted a breach of the implied warranty of merchantability, it fails to state a claim upon which relief may be granted.  Count II shall therefore be dismissed with prejudice.

   *4.  Unjust Enrichment*

Defendants likewise move for the dismissal of Count III of the complaint, which purports to plead a cause of action against Defendants for unjust enrichment.

"Unjust enrichment is an equitable remedy, defined as 'the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution." Golden Gate, 648 Pa. at 644, 194 A.3d at 1034 (quoting Roethlein v. Portnoff Law Assocs., Ltd., 623 Pa. 1, 81 A.3d 816, 825, n.8 (Pa. 2013)).  "An action based on unjust enrichment is an action which sounds in quasi-contract or contract implied in law," which are "obligations created by law for reasons of justice." Sevast v. Kakouras, 591 Pa. 44, 50, 915 A.2d 1147, 1151. n.4 (Pa. 2007).  "'The elements of unjust enrichment are benefits conferred on one party by the other party, appreciation of such benefits, and acceptance and retention of such benefits under such circumstances that it would be inequitable for that party to retain the benefit without payment of value.'"  McConaghy v. Bank of New York, 192 A.3d 1171, 1175 (Pa. Super. 2018)(quoting Gutteridge v. J3 Energy Group, Inc., 2017 PA Super 150, 165 A.3d 908, 917 (Pa. Super. 2017)).  "Whether the doctrine applies depends on the unique factual circumstances of each case" and "in determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the one party has been unjustly enriched." Id.  Where unjust enrichment is found, the law implies a contract, which requires the defendant to pay to the plaintiff the value of the benefit conferred.

Milby v. Pote, 2018 PA Super 155, 189 A.3d 1065, 1087 (Pa. Super. 2018); Schenck v. K.E. David, Ltd., 446 Pa. Super. 94, 97, 666 A.2d 327, 328-329 Pa. Super. 1995).

In application of the foregoing, Plaintiffs plead in Count III that the Defendants "have been unjustly enriched in retaining the revenues derived from [their] misrepresentations and/or omissions" regarding the proper daily feeding directions on the labels of the three dry dog foods at issue, "which caused Plaintiffs and the Class Members to purchase more dog food products than otherwise necessary." (Pls' Compl., ¶ 131). They further contend: "Defendants' retention of the revenues derived from Defendants' misrepresentations and/or omissions as to the daily feeding directions on the labels of their dog food products is unjust and inequitable, because Plaintiffs would not have purchased additional dog food products and Defendants would not have received additional monies, but for the false representations and/or omissions." (Compl., ¶ 132). We find that Plaintiffs have thereby pled sufficient facts which if proven, could conceivably warrant a finding in their favor that Defendants were unjustly enriched by their retention of the revenues produced through the plaintiffs' allegedly unnecessary purchases. The motion to dismiss is therefore denied as to Count III.

*5. Civil Conspiracy*

Count VI of the Complaint raises a claim for civil conspiracy in that the "Defendants conspired with each other to commit unlawful acts or lawful acts in an unlawful manner." (Pls' Compl., ¶ 162). Defendant argues that the civil conspiracy count fails "at the threshold" because Plaintiffs have failed to state an underlying tort claim and because the Complaint "fails to allege the manner in which a conspiratorial scheme was devised and carried out." (WellPet, LLC's Brief in Support of Motion to Dismiss Plaintiffs' Complaint, p. 12).

It has long been the law of Pennsylvania that "in order to state a cause of action for civil conspiracy, a plaintiff must show that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. Proof of malice, *i.e.* an intent to injure, is essential in proof of a conspiracy." Skipworth by Williams v. Lead Industries Association, Inc., 547 Pa. 224, 235, 690 A.2d 169, 174 (Pa. 1997)(quoting Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 211, 412 A.2d 466, 472 (1979)). Accordingly, the following elements must be alleged: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." Kline v. Security

Guards, Inc., 386 F.3d 246, 262 (3d Cir. 2004); Meyer v.

Delaware Valley Lift Truck, Inc., 392 F. Supp. 3d 483, 496 (E.D.

Pa. 2019).  Additionally, "[s]ince liability for civil

conspiracy depends on performance of some underlying tortious

act, the conspiracy is not independently actionable" but is

rather "a means for establishing vicarious liability for the

underlying tort." Boyanowski v. Capital Area Intermediate Unit,

215 F.3d 396, 407 (3d Cir. 2000).  "Therefore, if a court

concludes that no tort was committed, there can be no civil

conspiracy to commit that tort." Kilbride Investments Ltd. v.

Cushman & Wakefield of Pa., Inc., 294 F. Supp.3d 369, 381 (E.D.

Pa. 2018)(citing Turevsky v. FixtureOne Corp., 904 F. Supp.2d

454, 462 (E.D. Pa. 2012)).

Here, Plaintiffs allege in their complaint that "Defendants

conspired with each other to commit unlawful acts or lawful acts

in an unlawful manner," in that "Defendants knowingly and

voluntarily agreed to engage in unfair and deceptive practices

to promote the use of their dog food products by making and

disseminating false, unsubstantiated, and misleading statements

and misrepresentations with regard to feeding directions, as

well as material omissions, in furtherance of their common

strategy to increase sales…" (Compl., ¶s 162, 165).  They

further aver that "Defendants acted with malice, purposely,

intentionally, unlawfully, and without a reasonable or lawful

excuse." (Compl., ¶ 170). While these allegations are largely conclusory, we nevertheless find that they are sufficiently specific to survive the Twombly/Iqbal test. As noted above, Plaintiffs have adequately alleged several underlying torts upon which conspiracy may be predicated. We shall therefore deny the motion with respect to Count VI.[6]

### 6. *Injunctive Relief*

Finally, Defendant contends that Plaintiffs have not properly stated a claim for injunctive relief because "there is no count in the complaint seeking an injunction, nor does the complaint identify any injunctive relief Plaintiffs seek." Rather, there is only a conclusory reference to "injunctive relief as necessary" in the Prayer for Relief portion of the complaint. (WellPet's Brief in Support of Motion to Dismiss Plaintiffs' Complaint, p. 15).

On this we must agree with Defendant – the complaint as it presently stands has not sufficiently stated a claim or shown an entitlement to injunctive relief. This Court can only speculate

---

6 In so holding, we note that Defendant has not invoked Pennsylvania's intercorporate conspiracy doctrine pursuant to which the two or more persons acting with a common purpose cannot be a corporation and the corporation's agent or officer given that a corporation cannot conspire with itself. See, e.g., Reese v. Pook & Pook, LLC, 158 F. Supp.3d 271, 293 (E.D. Pa. 2016); Haydinger v. Freedman, Civ. A. No. 98-3045, 2000 U.S. Dist. LEXIS 7924, *35, 2000 WL 748055 (E.D. Pa. June 9, 2000); Jagielski v. Package Mach. Co., 489 F. Supp. 232, 233 (E.D. Pa. 1980). We shall assume that Defendants have elected to forego this argument at least until after such time as discovery may be undertaken into the corporate relationship between Berwind and WellPet has been completed.

as to the nature of the relief sought and <u>Twombly</u> and <u>Iqbal</u> make clear that pleadings require a showing of entitlement to relief and sufficient detail as to the basis therefor to enable a defendant to formulate a defense.  Thus, to the extent that the complaint is endeavoring to state a cause of action for injunctive relief, that cause of action is dismissed, albeit with a grant of leave to Plaintiffs to amend to properly plead such a claim should they truly desire it.

For all of the reasons set forth above, WellPet's Motion to Dismiss Plaintiffs' Complaint shall be granted in part and denied in part pursuant to the attached Order.