IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RITA SCHMIDT LODUCA *et al.*, | |
| *Plaintiffs*, | Civil Action |
| v. | No. 21-cv-954 |
| WELLPET LLC, | |
| *Defendant*. | |

**MEMORANDUM OPINION**

GOLDBERG, J. June 27, 2022

Plaintiffs Rita Schmidt Loduca, Donna Freeman, and Lynn Wesley seek to represent a class of individuals allegedly harmed when they purchased dog food with inaccurate feeding instructions sold by Defendant Wellness Pet, LLC (formerly known as WellPet). Plaintiffs allege that Defendant's feeding instructions specified quantities of food too large for the average dog, causing purchasers to overfeed their dogs and buy too much food.

Before me is Defendant's Motion to Strike Plaintiffs' class claims under Federal Rule of Civil Procedure 23(d)(1)(D). Although there has been no discovery and no motion for class certification, Defendant argues it is clear on the face of Plaintiffs' Amended Complaint that this lawsuit cannot proceed as a class action. Plaintiffs oppose the Motion. For the reasons set out below, I will grant the Motion and strike Plaintiffs' class claims.

1

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

   A.      **Plaintiffs' Allegations**

Because no discovery has taken place, I will view the allegations in Plaintiffs' Amended Complaint as true[1]:

- Defendant manufactures and sells pet food. Defendant's products include dog food sold under the brands "Wellness CORE, Wellness Complete Health, and Holistic Select." (Compl. ¶ 20-21.)

- On the package of Defendant's dog food is a label with feeding instructions, which contains a table showing the recommended daily feeding quantity, in cups or grams, based on the weight of the dog. (Id. ¶ 42.)

- This label "misrepresent[s] the appropriate daily feeding amounts for dogs." Specifically, the quantities given are "only appropriate for the highest demand activity level and breed" and are "significantly higher than the daily feeding directions published by other independent entities … ." (Id. ¶¶ 2, 8.) "[F]eeding canine pets within the parameters of the feeding information on the labels results in overfeeding for the vast majority of canine pets." (Id. ¶ 44.) The labels make no mention of this fact. (Id. ¶ 2.)

- The inaccurate labels led purchasers to overfeed their dogs and purchase too much dog food. (Id. ¶¶ 4-7.) This caused health problems for the dogs and wasted purchasers' money. (Id. ¶ 63.)

- Plaintiffs are dog owners who purchased Defendant's dog food products, fed them to their dogs, and relied on the quantities specified in the labels, causing Plaintiffs to overfeed their dogs. (Id. ¶¶ 76-80.)

Plaintiffs seek to represent a class of all purchasers of Wellness CORE, Wellness Complete Health, and Holistic Select. (Id. ¶ 85.) On behalf of themselves and the class, Plaintiffs bring claims for violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), unjust enrichment, negligent misrepresentation, fraud, and civil conspiracy. Plaintiffs seek

---

[1] See Landsman & Funk PC v. Skinder-Strauss Associates, 640 F.3d 72, 93 n.30 (3d Cir. 2011) (assessing whether "the complaint itself" demonstrates that the requirements for class certification cannot be met).

compensatory damages for harm to Plaintiffs and classmembers, restitution of Defendant's unlawful gains, and a declaration that Defendant engaged in unlawful conduct.

### B. Procedural History

Plaintiffs filed their initial complaint on March 1, 2021. Defendant then moved to dismiss all claims. The Honorable J. Curtis Joyner denied the motion as to Plaintiffs' claims for violation of the UTPCPL, negligent misrepresentation, unjust enrichment, and civil conspiracy. Schmidt Loduca v. WellPet LLC, 549 F. Supp. 3d 391, 401-07 (E.D. Pa. 2021). Judge Joyner found that Plaintiffs' fraud claim lacked particularity but granted Plaintiffs leave to amend it. Id. at 402. Plaintiffs then filed an Amended Complaint, which Defendant answered.[2]

Shortly before answering the Amended Complaint, Defendant filed the instant Motion to Strike the class allegations. While the Motion was pending, the parties submitted a joint letter disputing the timing of discovery. To resolve the dispute, I held a telephone conference on March 28, 2022 under Rule 16. During that conference, I decided that discovery would not proceed until I had addressed Defendant's Motion to Strike.[3]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 23 provides a mechanism for individuals before the court to assert claims on behalf of absent parties as part of a class action. See Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013). Ordinarily, a court decides whether a matter will proceed as a class action when one party moves to "certify" a class. See Richardson v. Bledsoe, 829 F.3d 273, 288 (3d Cir. 2016). However, "[i]n conducting an action under [Rule 23], the court may issue orders that …

---

[2] On August 4, 2021, this case was reassigned to my docket.

[3] Shortly after the Rule 16 conference, Plaintiffs filed a proposed surreply brief in opposition to Defendant's Motion to Strike, which I have considered.

require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). This subsection has been interpreted as permitting motions to "strike" class claims before the named plaintiffs move for certification. See In re Railway Industry Employee No-Poach Antitrust Litigation, 395 F. Supp. 3d 464, 495 (W.D. Pa. 2019).

In deciding a motion to strike class claims, a court should be mindful that there are "rare few" cases where the propriety of the proposed class action can be determined from the complaint alone. Landsman, 640 F.3d at 93 n.30. Some factual development of matters beyond the complaint is usually necessary to conduct the "rigorous analysis" Rule 23 demands. Id. at 93. "Particularly when a court considers predominance, it may have to venture into the territory of a claim's merits and evaluate the nature of the evidence." Id.

Although there is no settled law on the parties' respective burdens on a motion under Rule 23(d)(1)(D), most courts in this Circuit follow a rule that "the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." Railway Industry, 395 F. Supp. 3d at 498 (collecting cases). Thus, a plaintiff unable to explain how discovery could "produce persuasive information substantiating the class action allegations" is not entitled to conduct discovery prior to the court deciding whether the requirements of Rule 23 have been met. Mantolete v. Bolger, 767 F.2d 1416, 1425 (9th Cir. 1985).

### III.  DISCUSSION

Defendant contends that Plaintiffs' Amended Complaint demonstrates that Plaintiffs' class claims cannot meet the requirements for class actions imposed by Rule 23. While Defendant raises numerous challenges to the propriety of Plaintiffs' class claims, Defendant's most substantial

4

challenge is to the requirement of Rule 23(b)(3) that class actions seeking damages must involve "questions of law or fact common to class members [that] predominate over any questions affecting only individual members." Because this ground is sufficient to resolve the present Motion, I do not reach Defendant's other grounds.

### A. Predominance

#### 1. The Tyson Foods Standard

A class action for damages may be maintained only if "common" questions in the litigation predominate over "individual" ones. Fed. R. Civ. P. 23(b)(3). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453 (2016). (quotation marks omitted). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." Id. (quotation marks omitted).

Predominance may exist even if "other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." Id. "While factual differences will not defeat predominance, any individual differences must be of lesser overall significance than the common issues, and they must be manageable in a single class action." Allen-Wright v. Allstate Ins. Co., No. 07-cv-4087, 2008 WL 5336701, at *5 (E.D. Pa. 2008) (alterations and quotation marks omitted).

"The aim of the predominance inquiry is to test whether any dissimilarity among the claims of class members can be dealt with in a manner that is not 'inefficient or unfair.'" In re Asacol

Antitrust Litig., 907 F.3d 42, 51 (1st Cir. 2018). "Inefficiency can be pictured as a line of thousands of class members waiting their turn to offer testimony and evidence on individual issues." Id. "Unfairness is equally well pictured as an attempt to eliminate inefficiency by presuming to do away with the rights a party would customarily have to raise plausible individual challenges on those issues." Id. at 51-52.

    2.  Application to Plaintiffs' Class Claims

The first step in applying the predominance standard is to identify which issues are common and which are individual. Norman v. Trans Union, LLC, 479 F. Supp. 3d 98, 139 (E.D. Pa. 2020). Defendant does not dispute that Plaintiffs' claims present some common issues. For example, Plaintiffs could use classwide proof to show that Defendant's feeding instructions misleadingly specify quantities inappropriate for the average dog. Common evidence could also establish that Defendant was aware of the inaccuracy.

However, Defendant contends that other issues are individual. These include: whether each classmember relied on the instructions, whether their reliance resulted in harm, and the measure of damages. I will focus my analysis on the first of these (reliance) because it is the most straightforward.

Each of Plaintiffs' fraud and misrepresentation claims contains an element of reliance. Tran v. Metropolitan Life Ins. Co., 408 F.3d 130, 140-41 (3d Cir. 2005). A consumer who purchases dog food with a misleading label but who does not read the label or rely on it in feeding their dog—for example, because they choose a quantity of food based on experience, advice from others, or the dog's behavior—therefore has no claim.[4]

---

[4] Plaintiffs also have claims for "unjust enrichment" and "civil conspiracy." The alleged wrongfulness of Defendant's enrichment stems from "Defendant's misrepresentations and/or omissions as to the proper daily feeding directions on the labels …, which caused Plaintiffs and the Class Members to purchase more dog food products than otherwise necessary." (Compl. ¶ 112.) Similarly,

Defendant argues there is no way to use evidence common to the class to prove which consumers relied on the label and which did not. Plaintiffs do not suggest a classwide method of proving reliance, nor do they argue that discovery could reveal one. I therefore conclude that, for purposes of the present Motion, reliance is an individual issue.

However, that does not end the inquiry. A claim involving individual issues may still proceed as a class action so long as the individual issues are "of lesser overall significance than the common issues." Allen-Wright, 2008 WL 5336701, at *5. To make that determination, a court must "consider how a trial on the merits would be conducted" and evaluate whether "any dissimilarity among the claims of class members can be dealt with in a manner that is not 'inefficient or unfair.'" In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 311 n.8 (3d Cir. 2009); Asacol, 907 F.3d at 51.

While this case is in the early stages, I nevertheless find that Plaintiffs will not be able to prove reliance in a manner that is both efficient and fair. Proof of reliance would require an investigation of the knowledge and thought processes of thousands of purchasers. Plaintiffs do not claim that dog owners typically document how they feed their dogs (nor that discovery could reveal such a practice), meaning proof would at best consist of classmembers' personal recollections. Plaintiffs therefore cannot prove what each classmember considered when feeding their dog without creating "a line of thousands of class members waiting their turn to offer testimony." Asacol, 907 F.3d at 51.

---

the alleged conspiratorial agreement was to "utilize misrepresentations and/or omissions in order to cause Plaintiffs to overfeed their pets, resulting in increased sales of [Defendant's] dog food products." (Id. ¶ 155.) Plaintiffs do not contend they can succeed on these claims without showing that the alleged misrepresentations were relied upon.

In addition, any "attempt to eliminate [this] inefficiency" would "do away with the rights a party would customarily have to raise plausible individual challenges on those issues." Id. at 51-52. Out-of-court statements from classmembers detailing what information they relied on would be inadmissible hearsay. Fed. R. Evid. 801. Cf. Tyson Foods at 460 (permitting evidence to be used to prove class claims when the evidence is "otherwise admissible"). Defendant has a right under the Rules of Evidence to cross examine the witnesses against it, and eliminating this right risks expanding Defendant's liability by lessening the burden of proof on a central and hotly contested issue. See Carrera v. Bayer Corp., 727 F.3d 300, 309 (3d Cir. 2013). The "line of thousands of class members waiting their turn to offer testimony" is therefore unavoidable if fairness is to be preserved.

My reasoning is consistent with that of the Honorable Petrese B. Tucker in Davis v. Bank of America, No. 13-cv-4396, 2016 WL 427049 (E.D. Pa. 2016). There, named plaintiffs sought to represent a class of homeowners who had been subject to foreclosure suits containing false allegations regarding the homeowners' obligations to pay attorneys' fees. Id. at *2. Judge Tucker found that a "highly fact-specific" inquiry into each homeowner's reliance on the allegedly false statements would be required because it would depend on the separate knowledge of each individual. Id. at *5-6. Judge Tucker determined that this inquiry was "unsuitable for class treatment" and, accordingly, struck the class claims. Id. at *6. The "highly fact-specific" inquiry referenced by Judge Tucker squarely applies here.

Plaintiffs respond that the lack of any precedential decision striking class claims for consumer fraud at the pleadings stage reflects that the issue of predominance is a factual one inappropriate for resolution prior to the development of a factual record. Plaintiffs are correct that no bright-line rule forbids consumer fraud claims to be brought as class actions. Indeed, a bright-line

8

rule would be inconsistent with Tyson Foods's direction that individual issues are tolerable in class claims so long as common issues are "more prevalent or important." Tyson Foods, 577 U.S. at 453. However, on the facts of this case, and giving Plaintiffs the benefit of every inference at the pleadings stage, Plaintiffs cannot show that common issues as to falsity and scienter are "more prevalent or important" than the innumerable individualized inquiries that would have to be conducted into each purchaser's mental state.

Plaintiffs further press that I should allow discovery before deciding the propriety of their class claims. While discovery may be used to develop factual issues relevant to class certification, Plaintiffs offer no suggestion specific to this case for how discovery could alter the outcome on predominance. Plaintiffs, who know best how to try their case, provide no roadmap as to how multiple dog owners would tell a factfinder what information they relied on when feeding their dogs. A general reference to the possibility of discovery is insufficient where, as here, Plaintiffs do not identify facts to be developed in discovery that could bear on the propriety of class certification. Mantolete, 767 F.2d at 1425.

Plaintiffs also offer to prove damages using a formula reflecting the amount of money injured classmembers should have spent on dog food. But this argument does not help their cause. Even assuming each classmember suffered damages, reliance is still an element Plaintiffs must satisfy. See Tran, 408 F.3d at 135-36. Plaintiffs' suggestion for an efficient means of proving damages thus does not avoid the "line of thousands of class members" that would be required to prove reliance.

I therefore find that Plaintiffs' Amended Complaint establishes that Plaintiffs cannot satisfy the requisites of Rule 23(b)(3). Accordingly, I will grant Defendant's Motion and strike the class claims.

### B. Prospective Relief

Plaintiffs alternatively argue that, even if they cannot satisfy predominance as to their damages claims, they should be permitted to seek class certification on their claim for declaratory relief. Plaintiffs point out that there is no requirement to show predominance in claims for declaratory relief and submit that they should be given an opportunity to meet the lower standard applicable to this claim. See Fed. R. Civ. P. 23(b)(2).

However, Plaintiffs' Amended Complaint does not set out a ground for federal subject matter jurisdiction sufficient to sustain a claim for prospective relief. See City of Los Angeles v. Lyons, 461 U.S. 95, 104-05 (1983); Fed. R. Civ. P. 8(a)(1), 12(h)(3). There is no allegation that Plaintiffs, now aware of the inaccuracies in Defendant's labelling, face a "real and immediate threat" that they will continue to be misled. Lyons, 461 U.S. at 103. In the absence of jurisdiction, I need not analyze whether class treatment of Plaintiffs' claim for declaratory relief is appropriate. See McNair v. Synapse Group, Inc., 672 F.3d 213, 226-27 (3d Cir. 2012).

### IV. CONCLUSION

For the reasons set out above, I will grant Defendant's Motion to Strike and will strike Plaintiffs' class allegations.

An appropriate order follows.